1  ANDRÉ BIROTTE JR.
   United States Attorney
2  ROBERT E. DUGDALE
   Assistant United States Attorney
3  Chief, Criminal Division
   WENDY T. WU (Cal. State Bar No. 242075)
4  STEPHANIE S. CHRISTENSEN (Cal. State Bar No. 236653)
   Assistant United States Attorneys
5  Cyber and Intellectual Property Crimes Section
        1200 United States Courthouse
6       312 North Spring Street
        Los Angeles, California 90012
7       Telephone:  (213) 894-0619/3756
        Facsimile:  (213) 894-8601
8       E-mail:     Wendy.Wu@usdoj.gov
                    Stephanie.Christensen@usdoj.gov
9
   Attorneys for Plaintiff
10 UNITED STATES OF AMERICA

11                  UNITED STATES DISTRICT COURT

12            FOR THE CENTRAL DISTRICT OF CALIFORNIA

13 UNITED STATES OF AMERICA,        ) CR No. 11-1175-SJO
                                    ) CR No. 1̶2̶- 13- 0008
14                 Plaintiff,       )
                                    )
15            v.                    ) PLEA AGREEMENT FOR DEFENDANT
                                    ) TYLER SCHRIER
16 TYLER SCHRIER,                   )
17 KEITH JAMES HUDSON, and          )
   RYDER FINNEY,                    )
                                    )
18                 Defendants.      )
19 _____      )

20

21      1.   This constitutes the plea agreement between TYLER

22 SCHRIER ("defendant") and the United States Attorney's Offices

23 for the Central District of California, the Northern District of

24 California, the District of Connecticut, the District of

25 Massachusetts, the Middle District of Florida, and the District

26 of Minnesota ("the USAOs") in the case United States v. Tyler

27 Schrier et al., CR No. 11-1175-SJO, as well as the investigation

28 of defendant's extortion, identity theft, and computer intrusion

schemes.  This agreement is limited to the USAOs and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>RULE 11(c)(1)(C) AGREEMENT</u>

2.   Defendant understands that this agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Accordingly, defendant understands that, if the Court determines that it will not accept this agreement, absent a breach of this agreement by defendant prior to that determination and whether or not defendant elects to withdraw any guilty pleas entered pursuant to this agreement, this agreement will, with the exception of paragraph 27 below, be rendered null and void and both defendant and the USAOs will be relieved of their obligations under this agreement.  Defendant agrees, however, that if defendant breaches this agreement prior to the Court's determination whether or not to accept this agreement, the breach provisions of this agreement, paragraphs 30 and 31 below, will control, with the result that defendant will not be able to withdraw any guilty pleas entered pursuant to this agreement, the USAOs will be relieved of all of their obligations under this agreement, and the Court's failure to follow any recommendation or request regarding sentence set forth in this agreement will not provide a basis for defendant to withdraw defendant's guilty pleas.

<u>DEFENDANT'S OBLIGATIONS</u>

3.   Defendant agrees to:

a) At the earliest opportunity requested by the USAOs

and provided by the Court, appear and plead guilty to count one of the indictment in <u>United States v. Tyler Schrier et al.</u>, Cr. No. 11-1175-SJO, which charges defendant with conspiracy in violation of 18 U.S.C. § 371;

b) Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAOs and provided by the Court, appear and plead guilty to count one and count two of the information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with extortion in violation of 18 U.S.C. § 875(d); unauthorized access to a protected computer to obtain information in violation of 18 U.S.C. §§ 1030(a)(2)(C), (c)(2)(B)(i); and committing offense while on release in violation of 18 U.S.C. § 3147(1) (the "Information").

c) Not contest facts agreed to in this agreement.

d) Abide by all agreements regarding sentencing contained in this agreement and affirmatively recommend to the Court that it impose sentence in accordance with paragraph 20 of this agreement.

e) Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

f) Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

g) Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

h) Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAOs.

i) Agree to and not oppose the imposition of the following conditions of probation or supervised release:

i)   Before using a computer or computer-related device capable or accessing the internet, screen name, password, e-mail account or internet service provider (ISP) for the first time, defendant shall notify his Probation Officer.  Computers and computer-related devices include, but are not limited to, personal computers, personal data assistants (PDAs), internet appliances, electronic games, and cellular telephones, as well as their peripheral equipment, that can access or can be modified to access the internet, electronic bulletin boards, and other computers, or similar media.  After notifying his Probation Officer about a particular computer, computer-related device, screen name, password, e-mail account or ISP, defendant need not notify the officer about subsequent use of that particular item.

ii)  Defendant shall, however, notify his Probation Officer of any additions to, removals from, upgrades of, updates of, reinstallations of, repairs of, or other modifications of the hardware or software on any computers, computer-related devices, or peripheral equipment  in the aforementioned items within one week of the change.

iii) Defendant shall possess and use only the computer(s) and computer-related devices, screen user names, passwords, e-mail accounts, and ISPs that have been disclosed to

1  his Probation Officer.

2           iv)  Defendant shall provide his Probation Officer

3  with all billing records for phone, cable, internet and satellite

4  services that he purchases, as requested by the Probation

5  Officer, so that his Probation Officer can verify his compliance

6  with these requirements.

7           v)  All computers, computer-related devices and

8  their peripheral equipment used by defendant shall be subject to

9  search and seizure by making a mirror image of the device or

10  searching the computer on-site.  The defendant shall not hide or

11  encrypt files or data without prior approval from the Probation

12  Officer.

13           vi)  Defendant shall not knowingly contact, or

14  attempt to contact any of the victims discussed in the indictment

15  and Information, including victims J.S., A.L., D.N., A.S., B.S.,

16  E.C., K.L., R.P., N.D., G.P., and M.A. ("the Victims") or their

17  families, including but not limited to their parents, siblings,

18  other relatives, any spouse or significant other with whom the

19  Victims may share an intimate relationship (whether existing now

20  or during the pendency of any term of supervised release), and

21  any children of the Victims (whether existing now or during the

22  pendency of any term of supervised release) (collectively,

23  "Victims' Families"), directly or indirectly by any means,

24  including but not limited to in person, by mail, telephone, e-

25  mail, text message, or otherwise via the internet or other

26  electronic means, or through a third party.

27           vii) Defendant shall not attempt to locate the

28  Victims or the Victims' Families or attempt to obtain information

1  concerning the whereabouts, phone numbers, e-mail addresses, or

2  other personal identifiers of the Victims or the Victims'

3  Families.

4  viii)  Defendant shall remain at least 100 yards

5  away from the Victims at all times.

6  ix)  Defendant shall not possess, or attempt to

7  possess, any materials, whether in hard copy, digital,

8  electronic, or any other form, that depict sexually explicit

9  and/or nude images of the Victims and/or that contain personal

10  identifying information, including any access devices and

11  bank/credit card account numbers, of the Victims.

12  j)  Not seek the discharge of any restitution

13  obligation, in whole or in part, in any present or future

14  bankruptcy proceeding.

15  THE USAOs' OBLIGATIONS

16  4.  The USAOs agree to:

17  a) Not contest facts agreed to in this agreement.

18  b) Abide by all agreements regarding sentencing

19  contained in this agreement and affirmatively recommend to the

20  Court that it impose sentence in accordance with paragraph 20 of

21  this agreement.

22  c) At the time of sentencing, recommend that any term

23  of imprisonment imposed in United States v. Tyler Schrier et al.,

24  CR No. 11-1175-SJO, run concurrent to any term of imprisonment

25  imposed as a result of defendant pleading guilty to counts one

26  and two of the Information (Exhibit A).

27  d)  At the time of sentencing, move to dismiss the

28  remaining counts of the indictment in United States v. Tyler

1   Schrier et al., CR No. 11-1175-SJO, as against defendant.

2   Defendant agrees, however, that at the time of sentencing the

3   Court may consider any dismissed charges in determining the

4   applicable Sentencing Guidelines range, the propriety and extent

5   of any departure from that range, and the sentence to be imposed.

6          e) Except for criminal tax violations (including

7   conspiracy to commit such violations chargeable under 18 U.S.C.

8   § 371), not further criminally prosecute defendant for the

9   commission of extortion, identity theft, and computer intrusion

10   arising out of defendant's conduct described in the agreed-to

11   factual basis set forth in Exhibit B.  Defendant understands that

12   the USAOs are free to criminally prosecute defendant for any

13   other unlawful past conduct or any unlawful conduct that occurs

14   after the date of this agreement.  Defendant agrees that at the

15   time of sentencing the Court may consider the uncharged conduct

16   in determining the applicable Sentencing Guidelines range, the

17   propriety and extent of any departure from that range, and the

18   sentence to be imposed after consideration of the Sentencing

19   Guidelines and all other relevant factors under 18 U.S.C.

20   § 3553(a).

21                      NATURE OF THE OFFENSES

22        5.  Defendant understands that for defendant to be guilty of

23   the crime charged in count one of the indictment in United States

24   v. Tyler Schrier et al., CR No. 11-1175-SJO, that is, conspiracy

25   in violation of Title 18, United States Code, Section 371, the

26   following must be true: (a) Beginning on an unknown date and

27   continuing through on or about November 10, 2010, there was an

28   agreement between two or more persons to access a protected

computer without authorization and obtain information for private financial gain, in violation of Title 18, United States Code, Sections 1030(a)(2)(C), (c)(2)(B)(i); (b) defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (c) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

The elements for accessing a protected computer without authorization and obtaining information for private financial gain, in violation of Title 18, United States Code, Sections 1030(a)(2)(C), (c)(2)(B)(i) (an object of the conspiracy charged in the indictment), are as follows: (a) Defendant intentionally accessed without authorization a computer; and (b) By accessing the computer without authorization, defendant obtained information from a computer that was used in or affected commerce or communication between one state and another state or between a states of the United States and a foreign country.

6.   Defendant understands that for defendant to be guilty of count one of the Information (Exhibit A), that is, extortion, in violation of 18 U.S.C. § 875(d), the following must be true: (a) defendant sent or transmitted in interstate commerce a communication containing a true threat to injure the reputation of another; (b) defendant sent or transmitted that communication with intent to extort money or other thing of value; and (c) defendant did so knowingly and willfully.

7.   Defendant understands that for defendant to be guilty of count two of the Information (Exhibit A), that is, accessing a protected computer without authorization and obtain information

for private financial gain, in violation of Title 18, United States Code, Sections 1030(a)(2)(C), (c)(2)(B)(i), and committing offense while on release in violation of 18 U.S.C. § 3147(1), the following must be true:  (a) Defendant intentionally accessed without authorization a computer; (b) By accessing the computer without authorization, defendant obtained information from a computer that was used in or affected commerce or communication between one state and another state or between a states of the United States and a foreign country; and (c) defendant committed the unlawful intrusion while released pending trial.

8.   Defendant understands that for defendant to be subject to the statutory maximum set forth below, the government must prove beyond a reasonable doubt that defendant committed the offense of accessing a protected computer without authorization and obtaining information for private financial gain, in violation of Title 18, United States Code, Sections 1030(a)(2)(C), (c)(2)(B)(i), while on release under Title 18, United States Code, Chapter 207, in the criminal case United States v. Tyler Schrier et al., CR No. 11-1175-SJO, which charged felonies.

<u>PENALTIES AND RESTITUTION</u>

9.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is: 5 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 875(d) is: 2 years' imprisonment; a 3-year period of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. §§ 1030(a)(2)(C), (c)(2)(B)(i) and 18 U.S.C. § 3147(1) is: 10 years' imprisonment; a 3-year period of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 17 years' imprisonment; a 3-year period of supervised release; a fine of $750,000, or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $300.

13.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant

10

serving a total term of imprisonment greater than the statutory
maximum stated above.

14.   Defendant understands that defendant will be required
to pay full restitution to the victims of the offenses to which
defendant is pleading guilty.  Defendant agrees that, in return
for the USAOs' compliance with their obligations under this
agreement, the Court may order restitution to persons other than
the victims of the offenses to which defendant is pleading guilty
and in amounts greater than those alleged in the counts to which
defendant is pleading guilty.  In particular, defendant agrees
that the Court may order restitution to any victim of any of the
following for any losses suffered by that victim as a result:
(a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in
connection with the offenses to which defendant is pleading
guilty ;and (b) any counts dismissed and charges not prosecuted
pursuant to this agreement as well as all relevant conduct, as
defined in U.S.S.G. § 1B1.3, in connection with those counts and
charges.  The parties currently believe that the applicable
amount of restitution is approximately $30,000, but recognize and
agree that this amount could change based on facts that come to
the attention of the parties prior to sentencing.

15.   Defendant understands that, by pleading guilty,
defendant may be giving up valuable government benefits and
valuable civic rights, such as the right to vote, the right to
possess a firearm, the right to hold office, and the right to
serve on a jury.  Defendant understands that once the Court
accepts defendant's guilty plea, it will be a federal felony for
defendant to possess a firearm or ammunition.  Defendant

1   understands that the conviction in this case may also subject

2   defendant to various other collateral consequences, including but

3   not limited to revocation of probation, parole, or supervised

4   release in another case and suspension or revocation of a

5   professional license.  Defendant understands that unanticipated

6   collateral consequences will not serve as grounds to withdraw

7   defendant's guilty plea.

8        16.   Defendant understands that, if defendant is not a

9   United States citizen, the felony conviction in this case may

10  subject defendant to: removal, also known as deportation, which

11  may, under some circumstances, be mandatory; denial of

12  citizenship; and denial of admission to the United States in the

13  future.  The Court cannot, and defendant's attorney also may not

14  be able to, advise defendant fully regarding the immigration

15  consequences of the felony conviction in this case.  Defendant

16  understands that unexpected immigration consequences will not

17  serve as grounds to withdraw defendant's guilty plea.

18                            FACTUAL BASIS

19       17.   Defendant admits that defendant is, in fact, guilty of

20  the offenses to which defendant is agreeing to plead guilty.

21  Defendant and the USAOs agree to the statement of facts provided

22  in the Factual Statement attached as Exhibit B to this agreement.

23  Defendant and the USAOs agree that this statement of facts is

24  sufficient to support pleas of guilty to the charges described in

25  this agreement and to establish the Sentencing Guidelines factors

26  set forth in paragraph 19 below but is not meant to be a complete

27  recitation of all facts relevant to the underlying criminal

28

1    conduct or all facts known to either party that relate to that

2    conduct.

3                SENTENCING FACTORS AND AGREED-UPON SENTENCE

4        18.    Defendant understands that in determining defendant's

5    sentence the Court is required to calculate the applicable

6    Sentencing Guidelines range and to consider that range, possible

7    departures under the Sentencing Guidelines, and the other

8    sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant

9    understands that the Sentencing Guidelines are advisory only.

10       19.    Defendant and the USAOs agree to the following

11   applicable sentencing guideline factors:

12      **Group 1: Count One of the Indictment in U.S. v. Tyler
        Schrier et al., No. CR 11-1175-SJO (18 U.S.C. § 371) and
13      Count Two of the Information (18 U.S.C. § 1030(a)(2)(C)),
        as grouped under U.S.S.G. § 3D1.2(d):**

14      Base Offense Level:      6     U.S.S.G. § 2B1.1(a)(2)

15      Loss Amount
16      (More than $200,000):    +12   U.S.S.G. § 2B1.1(b)(1)(G)

17      10 or more Victims:      +2    U.S.S.G. § 2B1.1(b)(2)

18      Intent to Obtain
        Personal Information:    +2    U.S.S.G. § 2B1.1(b)(16)
19
        Use of Special Skill:    +2    U.S.S.G. § 3B1.3
20
        Commission of Offense
21      While on Release         +3    U.S.S.G. § 3C1.3

22      Total Offense Level:     27

23      _____

24      **Group 2: Count One of the Information (18 U.S.C. § 875(d)):**

25      Base Offense Level:      9     U.S.S.G. § 2B3.3(a)

26      Loss Demanded
        (more than $120,000):    +10   U.S.S.G. § 2B1.1(b)(1)(F)
27
        Total Offense Level:     19
28

                              13

**Multiple Count Adjustment under U.S.S.G. § 3D1.4:**

Group 1:          1 Unit     U.S.S.G. § 3D1.4(a)

Group 2:          ½ Unit     U.S.S.G. § 3D1.4(b)

Total Units:      1½ Unit = +1 level U.S.S.G. § 3D1.4

---

Combined Offense
Level:            27 + 1 =  28

Acceptance of
Responsibility:             -3    U.S.S.G. § 3E1.1

Total Offense Level:        25

Criminal History
Category:                   I

---

Guideline Range   :    57-71 months imprisonment

                       $10,000-$100,000 fine

The parties reserve the right to argue whether the additional specific offense characteristic of sophisticated means under U.S.S.G. § 2B1.1(b)(10)(C) is applicable.  The parties agree not to argue that any other specific offense characteristics, adjustments, or departures be imposed.

20.   Defendant and the USAOs agree that, taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-(7) and the relevant sentencing guideline factors set forth above, an appropriate disposition of this case is that the Court impose a sentence of: 42 months' imprisonment; 3 years' supervised release with conditions to be fixed by the Court, which shall include the conditions agreed to by defendant in paragraph 3 above; $30,000 fine; $300 special assessment; and $30,000 restitution.  The

parties agree that restitution is to be paid pursuant to a
schedule to be fixed by the Court at the time of sentencing.  The
parties also agree that no prior imprisonment (other than credits
that the Bureau of Prisons may allow under 18 U.S.C. § 3585(b))
may be credited against this stipulated sentence, including
credit under Sentencing Guideline 5G1.3.

WAIVER OF CONSTITUTIONAL RIGHTS

21.  Defendant understands that by pleading guilty,
defendant gives up the following rights:

a) The right to persist in a plea of not guilty.

b) The right to a speedy and public trial by jury.

c) The right to be represented by counsel – and if
necessary have the court appoint counsel – at trial.  Defendant
understands, however, that, defendant retains the right to be
represented by counsel – and if necessary have the Court appoint
counsel – at every other stage of the proceeding.

d) The right to be presumed innocent and to have the
burden of proof placed on the government to prove defendant
guilty beyond a reasonable doubt.

e) The right to confront and cross-examine witnesses
against defendant.

f) The right to testify and to present evidence in
opposition to the charges, including the right to compel the
attendance of witnesses to testify.

g) The right not to be compelled to testify, and, if
defendant chose not to testify or present evidence, to have that
choice not be used against defendant.

1         h) Any and all rights to pursue any affirmative

2 defenses, Fourth Amendment or Fifth Amendment claims, and other

3 pretrial motions that have been filed or could be filed.

WAIVER OF VENUE

5     22.  Having been fully advised by defendant's attorney

6 regarding the requirements of venue with respect to the offenses

7 to which defendant is pleading guilty, to the extent the offenses

8 to which defendant is pleading guilty were committed, begun, or

9 completed outside the Central District of California, defendant

10 knowingly, voluntarily, and intelligently waives, relinquishes,

11 and gives up: (a) any right that defendant might have to be

12 prosecuted only in the district where the offenses to which

13 defendant is pleading guilty were committed, begun, or completed;

14 and (b) any defense, claim, or argument defendant could raise or

15 assert based upon lack of venue with respect to the offenses to

16 which defendant is pleading guilty.

WAIVER OF APPEAL OF CONVICTION

18     23.  Defendant understands that, with the exception of an

19 appeal based on a claim that defendant's guilty pleas were

20 involuntary, by pleading guilty defendant is waiving and giving

21 up any right to appeal defendant's convictions on the offenses to

22 which defendant is pleading guilty.

WAIVER OF RETURN OF DIGITAL DATA

24     24.  Understanding that the government has in its possession

25 digital devices and/or digital media seized from defendant,

26 defendant waives any right to the return of digital data

27 contained on those digital devices and/or digital media and

28 agrees that if any of these digital devices and/or digital media

16

1  are returned to defendant, the government may delete all digital

2  data from those digital devices and/or digital media before they

3  are returned to defendant.

4  LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

5  25.  Defendant agrees that, provided the Court imposes the

6  sentence specified in paragraph 20 above, defendant gives up the

7  right to appeal any portion of that sentence.

8  26.  The USAOs agree that, provided the Court imposes the

9  sentence specified in paragraph 20 above, the USAOs give up their

10 right to appeal any portion of that sentence.

11 RESULT OF WITHDRAWAL OF GUILTY PLEA

12 27.  Defendant agrees that if, after entering guilty pleas

13 pursuant to this agreement, defendant seeks to withdraw and

14 succeeds in withdrawing defendant's guilty pleas on any basis

15 other than a claim and finding that entry into this plea

16 agreement was involuntary, then (a) the USAOs will be relieved of

17 all of their obligations under this agreement; and (b) should the

18 USAOs choose to pursue any charge that was either dismissed or

19 not filed as a result of this agreement, then (i) any applicable

20 statute of limitations will be tolled between the date of

21 defendant's signing of this agreement and the filing commencing

22 any such action; and (ii) defendant waives and gives up all

23 defenses based on the statute of limitations, any claim of pre-

24 indictment delay, or any speedy trial claim with respect to any

25 such action, except to the extent that such defenses existed as

26 of the date of defendant's signing this agreement.

27 ///

28

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

28.  Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAOs may: (a) ask the Court to resentence defendant on any remaining count of conviction, with the USAOs and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on any remaining count of conviction, with the USAOs and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining convictions, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAOs.

## EFFECTIVE DATE OF AGREEMENT

29.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

30.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAOs may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAOs to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAOs in writing.  If the USAOs declare

this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, (b) the USAOs will be relieved of all its obligations under this agreement, and (c) the Court's failure to follow any recommendation or request regarding sentence set forth in this agreement will not provide a basis for defendant to withdraw defendant's guilty pleas.

31. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAOs choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b) Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c) Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the

1  Federal Rules of Criminal Procedure, or any other federal rule,

2  that the statements or any evidence derived from the statements

3  should be suppressed or are inadmissible.

4                  COURT AND PROBATION OFFICE NOT PARTIES

5       32.  Defendant understands that the Court and the United

6  States Probation Office are not parties to this agreement and

7  need not accept any of the USAOs' sentencing recommendations or

8  the parties' agreements to facts, sentencing factors, or

9  sentencing.  Defendant understands that the Court will determine

10  the facts, sentencing factors, and other considerations relevant

11  to sentencing and will decide for itself whether to accept and

12  agree to be bound by this agreement.

13      33.  Defendant understands that both defendant and the USAOs

14  are free to: (a) supplement the facts by supplying relevant

15  information to the United States Probation Office and the Court,

16  (b) correct any and all factual misstatements relating to the

17  Court's Sentencing Guidelines calculations and determination of

18  sentence, and (c) argue on appeal and collateral review that the

19  Court's Sentencing Guidelines calculations and the sentence it

20  chooses to impose are not error, although each party agrees to

21  maintain its view that the calculations and sentence referenced

22  in paragraphs 19 and 20 are consistent with the facts of this

23  case.  While this paragraph permits the USAOs and defendant to

24  submit full and complete factual information to the United States

25  Probation Office and the Court, even if that factual information

26  may be viewed as inconsistent with the facts agreed to in this

27  agreement, this paragraph does not affect defendant's and the

28

1 | USAOs' obligations not to contest the facts agreed to in this

2 | agreement.

3 | <u>NO ADDITIONAL AGREEMENTS</u>

4 | 34. Defendant understands that, except as set forth herein,

5 | there are no promises, understandings, or agreements between the

6 | USAOs and defendant or defendant's attorney, and that no

7 | additional promise, understanding, or agreement may be entered

8 | into unless in a writing signed by all parties or on the record

9 | in court.

10 | <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

11 | 35. The parties agree that this agreement will be

12 | considered part of the record of defendant's guilty plea hearing

13 | as if the entire agreement had been read into the record of the

14 | proceeding.

15 | AGREED AND ACCEPTED

16 | UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

17 |

ANDRÉ BIROTTE JR.
18 | United States Attorney

19 |

20 | _____          1/3/2013
WENDY T. WU                      Date
21 | STEPHANIE S. CHRISTENSEN
Assistant United States Attorneys
22 |

23 | _____          12/6/12
TYLER SCHRIER                    Date
24 | Defendant

25 |

26 | _____          12/6/12
WILLIAM S. HARRIS                Date
27 | Attorney for Defendant
Tyler Schrier
28 |

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_Tyler Schrier_                    12/6/12
TYLER SCHRIER                       Date
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Tyler Schrier's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____        12/6/12
WILLIAM S. HARRIS                       _____
Attorney for Defendant                  Date
Tyler Schrier

23

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR No. 12- |
| Plaintiff, | ) <br> ) <u>I N F O R M A T I O N</u> <br> ) |
| v. | ) [18 U.S.C. § 875(d): Extortion; <br> ) 18 U.S.C. §§ 1030(a)(2)(C), |
| TYLER SCHRIER, | ) (c)(2)(B)(i): Unauthorized <br> ) Access to a Protected Computer |
| Defendant. | ) to Obtain Information; 18 <br> ) U.S.C. § 3147(1): Committing <br> ) Offense While on Release] |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 875(d)]

On or about August 8, 2010, in the Northern District of California and elsewhere, defendant TYLER SCHRIER, with the intent to extort money and other things of value, transmitted in interstate and foreign commerce from Menlo Park, California, to Boston, Massachusetts, an e-mail communication to victim E.C. that contained a true threat to injure the reputation of victims E.C., R.P., N.D., and K.L.

WW:ww

COUNT TWO

[18 U.S.C. §§ 1030(a)(2)(C), (c)(2)(B)(i);  18 U.S.C. § 3147(1)]

On or about October 22, 2012, in the Northern District of California and elsewhere, defendant TYLER SCHRIER ("defendant SCHRIER") intentionally accessed without authorization, and thereby obtained information, namely, the contents of victim G.P.'s e-mail account, from a computer used in and affecting interstate and foreign commerce, for purposes of private financial gain.

It is further alleged that at the time of the offense described above, defendant SCHRIER was released under Title 18, United States Code, Chapter 207, in the criminal case United States v. Tyler Schrier et al., CR No. 11-1175-SJO, which charged felonies.

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

WESLEY L. HSU
Assistant United States Attorney
Chief, Cyber & Intellectual
Property Crimes Section

ERIC D. VANDEVELDE
Assistant United States Attorney
Deputy Chief, Cyber & Intellectual
Property Crimes Section

WENDY T. WU
Assistant United States Attorney
Cyber & Intellectual Property
Crimes Section

STEPHANIE S. CHRISTENSEN
Assistant United States Attorney
Cyber & Intellectual Property
Crimes Section

2

# EXHIBIT B

1  **EXHIBIT B – FACTUAL STATEMENT OF DEFENDANT TYLER SCHRIER**

2      At all times relevant to the charges in <u>United States</u>

3  <u>v. Tyler Schrier et al.</u>, CR No. 11-1175-SJO, and the two-count

4  Information (Exhibit A to the Plea Agreement), defendant TYLER

5  SCHRIER ("defendant") attended Trinity College in Hartford,

6  Connecticut; victims J.S. and A.L. resided in the Central

7  District of California; victims A.S., B.S., and M.A. resided in

8  the Northern District of California; victim E.C. resided in the

9  District of Massachusetts; victim K.L. resided in the District of

10  Minnesota; victims R.P. and N.D. resided in the Middle District

11  of Florida; and victim G.P. resided in the United Kingdom.

12  <u>THE EXTORTION OF VICTIMS E.C., R.P., N.D., AND K.L.</u>

13      On or about August 8, 2010, in the District of Connecticut

14  and elsewhere, defendant knowingly and willfully, transmitted

15  from Menlo Park, California, to Boston, Massachusetts, an e-mail

16  communication to victim E.C. that contained a true threat to

17  injure the reputation of victims E.C., R.P., N.D., and K.L.

18  Specifically, the e-mail communication sent by defendant

19  contained a demand for payments of $5,000 every six months for 10

20  years, in exchange for defendant not disclosing information

21  regarding the victims' online poker activities.

22      In furtherance of his extortion scheme, defendant used an

23  identification fraudulently obtained under the name "A.S." and

24  California Driver License XXXX6233 when opening an online poker

25  account in which to receive the extortion payments.  Defendant

26  did so without lawful authority.  Defendant knew "A.S." was not

27  defendant's real name and further knew that this information

28  belonged to another person.  Defendant also knew that the

1

1   California Driver License number XXXX6233 was not defendant's

2   Driver License number, and that the information belonged to

3   another person, victim B.S.

4        Defendant received more than $26,000 in extortion payments

5   from victim E.C.

6   THE EXTORTION OF VICTIMS J.S., A.L., and D.N.

7        Beginning on an unknown date and continuing through on or

8   about November 10, 2010, in Los Angeles County, within the

9   Central District of California, and elsewhere, defendant and co-

10  conspirators KEITH JAMES HUDSON ("HUDSON") and RYDER FINNEY

11  ("FINNEY") conspired and agreed with each other to access a

12  protected computer without authorization and obtain information

13  for private financial gain, in violation of Title 18, United

14  States Code, Sections 1030(a)(2)(C) and (c)(2)(B)(i).

15       Pursuant to the above-mentioned conspiracy, defendant and

16  co-conspirator HUDSON would gain unauthorized access to victim

17  J.S.'s e-mail account.  Co-conspirator HUDSON would obtain

18  information from victim J.S.'s e-mail account, specifically,

19  e-mails and intimate photographs of victim J.S., and send the

20  information to defendant.  Defendant would contact victims J.S.,

21  A.L., and D.N., and threaten to post those intimate photographs

22  and e-mails on the Internet unless they provided him with money

23  or credits on online poker accounts.  Co-conspirator FINNEY would

24  facilitate the receipt of money from the victims and transfer the

25  money to defendant.

26       In furtherance of the conspiracy and to accomplish the

27  object of the conspiracy, defendant and co-conspirators HUDSON

28

                                2

and FINNEY, together with others, committed various overt acts in the Central District of California and elsewhere, including:

(1)  On or about October 17, 2010, defendant accessed victim J.S.'s e-mail account without authorization.

(2)  On or about October 18, 2010, defendant received from co-conspirator HUDSON an e-mail containing screenshots of intimate e-mails between J.S. and other women and a nude photograph of victim J.S.

(3)  On or about October 18, 2010, defendant sent to victim J.S. an e-mail threatening to post intimate photographs of victims J.S. and A.L. on the Internet unless victim J.S. paid money to defendant.

(4)  On or about October 18, 2010, defendant contacted victim J.S. via AOL Instant Messenger and threatened to post intimate photographs of victims J.S. and A.L. on the Internet unless victim J.S. paid $100,000 to defendant.

(5)  On or about October 18, 2010, defendant contacted victim J.S. via AOL Instant Messenger and instructed victim J.S. to pay defendant $60,000 and pay $5,000 each year thereafter in exchange for defendant not releasing victim J.S.'s intimate photographs.

(6)  On or about October 18, 2010, defendant contacted victim J.S. via AOL Instant Messenger and threatened to post victim J.S.'s intimate photographs on the Internet in the event that victim J.S. told anyone about the extortion by defendant.

(7)  On or about October 19, 2010, defendant contacted victim J.S. via AOL Instant Messenger and threatened to post

intimate photographs of victims J.S. on the Internet unless victim J.S. transferred $100,000 into an online poker account.

(8)  On or about October 19, 2010, defendant contacted victim J.S. via AOL Instant Messenger and threatened to post victim J.S.'s intimate photographs in the event that victim J.S. told anyone about the extortion by defendant.

(9)  On or about October 20, 2010, in a cellular telephone text message to co-conspirator HUDSON, defendant discussed the extortion of victim J.S.

(10)  On or about October 20, 2010, in a cellular telephone text message to co-conspirator FINNEY, defendant discussed verifying co-conspirator FINNEY's online poker account in order to receive $100,000 from victim J.S.

(11)  On or about October 20, 2010, in a cellular telephone text message to co-conspirator FINNEY, defendant discussed the extortion of victim J.S. for $100,000.

(12)  On or about October 21, 2010, defendant contacted victim J.S. via AOL Instant Messenger and threatened to post victim J.S.'s intimate photographs on the Internet in the event that victim J.S. told anyone about the extortion by defendant.

(13)  On or about October 21, 2010, defendant contacted victim J.S. via AOL Instant Messenger and instructed victim J.S. to transfer $20,000 into an online poker account in exchange for defendant not releasing victim J.S.'s intimate photographs.

(14)  On or about October 21, 2010, defendant sent to victim A.L. an e-mail attaching an intimate photograph of victim A.L. that was obtained from victim J.S.'s e-mail account.

4

1     (15)   On or about October 21, 2010, defendant sent to victim
2  A.L. an e-mail threatening to post intimate photographs of victim
3  A.L. on the Internet unless victim A.L. made six monthly payments
4  to defendant.

5     (16)   On or about October 21, 2010, defendant sent to victim
6  A.L. an e-mail demanding $1,000,000 from victim A.L.    (17)   On
7  or about October 22, 2010, defendant sent to victim A.L. an e-
8  mail threatening to post intimate photographs of victim A.L. on
9  the Internet unless victim J.S. transferred money into victim
10  A.L.'s online poker account and victim A.L. provided defendant
11  with the password to access victim A.L.'s account.

12     (18)   On or about October 22, 2010, defendant contacted
13  victim J.S. via AOL Instant Messenger and threatened to post
14  intimate photographs of victim J.S. on the Internet unless victim
15  J.S. paid defendant $20,000 through Western Union.

16     (19)   On or about October 25, 2010, defendant sent to victim
17  A.L. an e-mail threatening to post intimate photographs of victim
18  A.L. on the Internet unless defendant received money from victim
19  A.L.

20     (20)   On or about October 25, 2010, defendant sent to victim
21  A.L. an e-mail stating that photographs had been posted on Pocket
22  Fives, a poker website.

23     (21)   On or about October 26, 2010, defendant sent to victim
24  A.L. an e-mail threatening to post intimate photographs of victim
25  A.L. on the Internet unless victim A.L. paid at least $1,000 to
26  defendant's online poker account under the name of "Craigslist
27  girl."

28

(22)   On or about October 26, 2010, defendant sent to victim A.L. an e-mail threatening to post intimate photographs of victim A.L. on the Internet unless victim A.L. paid money to defendant that evening.

(23)   On or about October 26, 2010, defendant sent to victim A.L. an e-mail instructing victim A.L. to have victim D.N. transfer money to defendant's online poker account under the name of "Craigslist girl."

(24)   On or about October 26, 2010, defendant sent to victim D.N. an e-mail threatening to post intimate photographs of victim A.L. on the Internet unless victim D.N. transferred $15,000 into defendant's online poker account under the name of "Craigslist girl."

(25)   On or about October 27, 2010, defendant sent to victim A.L. an e-mail threatening to post intimate photographs of victim A.L. on the Internet unless victim A.L. paid money to defendant.

(26)   On or about October 27, 2010, defendant sent to victim D.N. an e-mail threatening to post intimate photographs of victim A.L. on the Internet unless victim D.N. paid $20,000 to defendant.

(27)   On or about October 28, 2010, in a cellular telephone text message to co-conspirator FINNEY, defendant discussed the extortion of victim J.S. for $100,000.

(28)   On or about October 28, 2010, defendant sent to victim D.N. an e-mail instructing him to make two separate transfers of $7,500 each into SCHRIER's online poker account under the screen name of "Craigslist girl."

1      (29)  On or about October 28, 2010, defendant sent to victim
2   D.N. an e-mail threatening to post intimate photographs of victim
3   A.L. on the Internet.

4      (30)  On or about October 29, 2010, defendant sent to victim
5   D.N. an e-mail instructing him to transfer $30,000 into co-
6   conspirator HUDSON's online poker account under the screen name
7   of "Marissa_20."

8      (31)  On or about October 29, 2010, defendant sent to victim
9   D.N. an e-mail threatening to post intimate photographs of victim
10  A.L. on the Internet that evening.

11     (32)  On or about October 29, 2010, defendant sent to victim
12  A.L. an e-mail threatening to post intimate photographs of victim
13  A.L. on the Internet that evening.

14     (33) On or about October 29, 2010, in a cellular telephone
15  text message, defendant told co-conspirator HUDSON that he
16  demanded $30,000 from victim D.N.

17     (34)  On or about October 30, 2010, defendant sent to victim
18  D.N. an e-mail instructing him to transfer $20,000 into co-
19  conspirator HUDSON's online poker account under the screen name
20  of "Marissa_20."

21     (35)  On or about October 30, 2010, defendant sent to victim
22  D.N. an e-mail instructing him to send money to defendant through
23  Western Union.

24     (36)  On or about October 30, 2010, in a cellular telephone
25  text message to co-conspirator HUDSON, defendant discussed the
26  extortion of victim D.N.

27

28

7

(37)   On or about October 30, 2010, in a cellular telephone text message to co-conspirator FINNEY, defendant stated, "the money is ready to be shipped."

(38)   On or about October 30, 2010, in a cellular telephone text message to co-conspirator FINNEY, defendant stated that co-conspirator FINNEY would receive $2,000 to $3,000 of the extortion payment from victim D.N.

(39)   On or about October 31, 2010, defendant sent to victim D.N. an e-mail threatening to post intimate pictures of victim A.L. on the Internet unless victim D.N. transferred $20,000 to co-conspirator FINNEY's online poker account.

(40)   On or about October 31, 2010, in a cellular telephone text message, defendant informed co-conspirator FINNEY that it was co-conspirator HUDSON who obtained the intimate photographs of victim J.S.

(41)   On or about October 31, 2010, in a cellular telephone text message, defendant informed co-conspirator FINNEY that victim D.N. would send money to co-conspirator FINNEY's account.

(42)   On or about November 1, 2010, defendant sent to victim D.N. an e-mail threatening to post intimate pictures of victim A.L. on the Internet unless victim D.N. transferred $20,000 to co-conspirator FINNEY's online poker account on the PokerStars.com website.

(43)   On or about November 2, 2010, defendant sent to victim D.N. an e-mail threatening to post intimate pictures of victim A.L. on the Internet unless victim D.N. paid defendant $40,000.

1      (44)  On or about November 2, 2010, in a cellular telephone

2  text message to co-conspirator HUDSON, defendant discussed the

3  extortion of victim D.N.

4      (45)  On or about November 2, 2010, in a cellular telephone

5  text message to co-conspirator FINNEY, defendant discussed the

6  extortion of victim D.N.

7      (46)  On or about November 4, 2010, defendant sent to victim

8  D.N. an e-mail threatening to post intimate pictures of victim

9  A.L. on the Internet unless victim D.N. paid defendant $75,000.

10      (47)  On or about November 4, 2010, in a cellular telephone

11  text message to co-conspirator HUDSON, defendant discussed the

12  extortion of victim D.N.

13      (48)  On or about November 4, 2010, in a cellular telephone

14  text message, defendant asked co-conspirator FINNEY to call him

15  regarding the transfer of $75,000 from victim D.N.

16      (49)  On or about November 5, 2010, defendant sent an e-mail

17  attaching a nude photograph of victim J.S. to approximately 100

18  individuals.

19      (50)  On or about November 5, 2010, defendant sent to victim

20  D.N. an e-mail threatening to post intimate pictures of victim

21  A.L. on the Internet unless victim D.N. paid money to defendant.

22      (51)  On or about November 5, 2010, in a cellular telephone

23  text message, defendant told co-conspirator FINNEY that victim

24  D.N. would be transferring $75,000 into co-conspirator FINNEY's

25  online poker account and instructed co-conspirator FINNEY to keep

26  $10,000 for himself.

27      (52)  On or about November 5, 2010, defendant sent to victim

28  D.N. an e-mail stating that "the price [has] gone up to 100k."

1     (53)  On or about November 6, 2010, defendant sent to victim

2  D.N. an e-mail threatening to raise the extortion price unless

3  victim D.N. paid $75,000 to defendant.

4     (54)  On or about November 6, 2010, in a cellular telephone

5  text message, defendant asked co-conspirator FINNEY to call him

6  regarding the transfer of $75,000 from victim D.N.

7     (55)  On or about November 8, 2010, in a cellular telephone

8  text message, defendant asked co-conspirator FINNEY to let him

9  know when co-conspirator FINNEY received money from victim D.N.

10     (56)  On or about November 8, 2010, defendant sent to victim

11  A.L. an e-mail threatening to post intimate pictures of victim

12  A.L. on the Internet unless victim D.N. paid money to defendant.

13     (57)  On or about November 8, 2010, defendant sent to victim

14  D.N. an e-mail threatening to post intimate pictures of victim

15  A.L. on the Internet unless victim D.N. paid defendant $110,000.

16     (58)  On or about November 9, 2010, in a cellular telephone

17  text message to co-conspirator HUDSON, defendant discussed the

18  extortion of victim D.N.

19     (59)  On or about November 9, 2010, in a cellular telephone

20  text message, defendant told co-conspirator FINNEY that he could

21  have $18,700 from the money to be received from victim D.N.

22  INTRUSION INTO VICTIM G.P. AND VICTIM M.A.'S E-MAIL ACCOUNTS

23     Beginning on or about October 4, 2012, in the Northern

24  District of California, defendant intentionally accessed, without

25  authorization, a computer used in interstate commerce belonging

26  to MSN Hotmail by accessing victim M.A.'s Hotmail e-mail account.

27  Defendant obtained information from victim M.A.'s e-mails for the

28  purpose of accessing victim M.A.'s online poker account and

1    obtained funds from that account without authorization.

2    Defendant unlawfully accessed and obtained information from

3    victim M.A.'s e-mail account on numerous occasions.  As a result

4    of defendant's conduct, victim M.A. incurred losses of at least

5    $2,000.

6          Beginning on or about October 22, 2012, in the Northern

7    District of California, defendant intentionally accessed, without

8    authorization, a computer used in interstate commerce belonging

9    to MSN Hotmail by accessing victim G.P.'s Hotmail e-mail account.

10   Defendant obtained information from victim G.P.'s e-mails for the

11   purpose of accessing victim G.P.'s online poker account and

12   obtained funds from that account without authorization.

13   Defendant unlawfully accessed and obtained information from

14   victim G.P.'s e-mail account on numerous occasions.  As a result

15   of defendant's conduct, victim G.P. incurred losses of at least

16   $2,000.

17         At the time of the unlawful intrusion into victim G.P. and

18   victim M.A.'s e-mail accounts described above, defendant was

19   released on bond pending trial in the criminal case United States

20   v. Tyler Schrier et al., CR No. 11-1175-SJO.

21

22

23

24

25

26

27

28

11